# Exhibit A

CASE NO. 25-11173
UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

HUZEFA HAFIZ ISMAIL, Petitioner-Appellant

VERSUS

UNITED STATES OF AMERICA, Respondent-Appellee

---

MOTION TO STAY FURTHER EXTRADITION PROCEEDINGS PENDING
RESOLUTION OF APPEAL NO. 25-11173, AN APPEAL FROM THE AUGUST
22, 2025, JUDGMENT IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION, CIVIL
ACTION NO. 4:25-CV-00446-0, THE HONORABLE CHIEF JUDGE
REED C. O'CONNOR PRESIDING

---

A CIVIL PROCEEDING

---

Respectfully submitted:

**PILLSBURY WINTHROP SHAW PITTMAN, L.L.P.**

Anne M. Voigts # 220783
2550 Hanover Street
Palo Alto, CA 94304-111
Telephone: (650) 233-4075
Facsimile: (650) 233-4545

*Appeal Counsel for Petitioner-Appellant*
*Huzefa Hafiz Ismail*

# CERTIFICATE OF INTERESTED PERSONS

Undersigned counsel certifies that the following persons and entities, as described in Fifth Circuit Rule of Procedure 28.2.1(a), have an interest in the outcome of this motion and this appeal, Case No. 25-11173:

The United States Department of State

The United States Department of Justice

The Republic of France

Mr. Huzefa Hafiz Ismail

Ms. Khadija Yakub Ismail


Counsel of Record:

*/s/ Anne M. Voigts*
Anne M. Voigts, Esq.

*Counsel of Record for Petitioner-*
*Appellant Huzefa Hafiz Ismail*

# TABLE OF CONTENTS

Page

NATURE OF MOTION AND RELIEF SOUGHT .................................................1

INTRODUCTION ................................................................................................1

BACKGROUND .................................................................................................4

    A.    The Republic of France Seeks Mr. Ismail's Extradition .....................4

    B.    Mr. Ismail Seeks Habeas Review of the Certification Through the District Court. .................................................................................9

    C.    The District Court Denies Mr. Ismail's Petition and Rule 59(e) Relief. ...............................................................................................10

    D.    The State Department Informs Mr. Ismail it Will Surrender and Extradite Him to France. ..................................................................10

    E.    Mr. Ismail Asks the District Court to Stay Extradition Pending Adjudication of His Appeal. ..............................................................11

THE GOVERNING LEGAL STANDARD ..........................................................12

ARGUMENT......................................................................................................13

  I.  A Stay Pending Adjudication of Mr. Ismail's Appeal is Necessary and Appropriate Under Controlling Law. ...................................................13

    A.    Mr. Ismail's Appeal Presents a Substantial Case on the Merits Concerning A Serious Legal Question. .............................................14

    B.    The Remaining Factors Tilt Heavily in Mr. Ismail's Favor. ..............17

        1.    Mr. Ismail will suffer obvious irreparable harm if a stay is not issued. .............................................................................18

        2.    A stay will not injure the federal government but will further the public interest. ........................................................18

CONCLUSION ..................................................................................................21

CERTIFICATE OF COMPLIANCE.....................................................................23

CERTIFICATE OF SERVICE.............................................................................24

# TABLE OF AUTHORITIES

Page(s)

Cases

*Al-Nouri v. Blinken*,
   No. CV-22-00633-PHX-GMS (DMF), 2023 WL 11827242 (D. Ariz.
   June 26, 2023)......................................................................................................16

*Alliance for Hippocratic Medicine v. Food & Drug Administration*,
   No. 23-10362, 2023 WL 2913725 (5th Cir. 2023) ...........................................12

*Balzan v. United States*,
   702 F.3d 220 (5th Cir. 2012).......................................................................3, 14

*Barber v. Bryant*,
   833 F.3d 510 (5th Cir. 2016).........................................................................13

*Blasko v. Boyden*,
   No. 1:18-cv-01649-DAD-SAB (HC), 2022 WL 3969648 (E.D. Cal. Aug.
   31, 2022).................................................................................... 19, 20, 21

*United States v. Cervantes*,
   703 F.3d 1135 (9th Cir. 2012)......................................................................16

*Demjanjuk v. Meese*,
   784 F.2d 1114 (D.C. Cir. 1986) ...................................................................18

*In re Extradition of Aquino*,
   697 F. Supp. 2d 586 (D.N.J. 2010)..............................................................16

*In re Extradition of Atuar*,
   300 F. Supp. 2d 418 (S.D. W. Va. 2003).................................................14, 16

*Matter of Extradition of Demjanjuk*,
   612 F. Supp. 544 (N.D. Ohio 1985) .......................................................14, 16

*In re Extradition of Hurtado-Hurtado*,
   No. 08-22414-MC, 2009 WL 1444509 (S.D. Fla. May 21, 2009) ...................19

*In re Extradition of Singh*,
   No. 01–6215 OWW, 98–5489 OWW, 2005 WL 3030819 (E.D. Cal. Nov.
   9, 2005)................................................................................................14

*In re Extradition of Vargas*,
   978 F. Supp. 2d 734 (S.D. Tex. 2013)....................................................14, 16

*Garcia v. Holder*,
   534 F. App'x 269 (5th Cir. 2013).............................................................14, 15

*Gusikoff v. United States*,
   620 F.2d 459 (5th Cir. 1980)..................................................................14

*Hilton v. Braunskill*,
   481 U.S. 770 (1987)..............................................................................12

*Ismail v. United States*,
   No. 4:25-cv-0446-O (N.D. Tex. Apr. 23, 2025) ............................3, 5, 9, 10, 24

*In re Ismail*,
   No. 4:24-mj-000656-BP-1 (N.D. Tex. Aug. 25, 2024)...............................4, 5

*Laurenzo By Laurenzo v. Mississippi High School Activities Ass'n, Inc.*,
   708 F.2d 1038 (5th Cir. 1983).................................................................12

*Ludecke v. U.S. Marshal*,
   15 F.3d 496 (5th Cir. 1994)....................................................................14

*Manrique v. Kolc*,
   65 F.4th 1037 (9th Cir. 2023).................................................................18

*Martinez v. United States*,
   No. 3:14–CV–00174, 2014 WL 4446924 (M.D. Tenn. Sep. 9, 2014) ........20, 21

*Nken v. Holder*,
   556 U.S. 418 (2009)..........................................................................12, 17

*Noel v. United States*,
   12 F. Supp. 2d 1300 (M.D. Fla. 1998).....................................................16

*Noriega v. Pastrana*,
   No. 07-cv-22816-PCH, 2008 WL 331394 (S.D. Fla. Jan. 31, 2008)................19

*Quintanilla v. United States*,
 582 F. App'x 412 (5th Cir. 2014)................................................. 2, 3, 12, 14, 18

*Ruiz v. Estelle ("Ruiz I")*,
 650 F.2d 555 (5th Cir. 1981)............................................................ 2, 3, 13, 14

*Ruiz v. Estelle ("Ruiz II")*,
 666 F.2d 854 (5th Cir. 1982)....................................................... 2, 3, 14, 15, 17

*United States v. Settegast*,
 755 F.2d 1117 (5th Cir. 1985)......................................................................17

*Vitkus v. Blinken*,
 79 F.4th 352 (4th Cir. 2023).........................................................................18

*FTC ex rel. Yost v. Educare Ctr. Servs., Inc.*,
 No. EP-19-CV-196-KC, 2020 WL 4334117 (W.D. Tex. Apr. 3, 2020)
 ............................................................................................................. 12, 13

### Statutes and Codes

United States Code
 Title 18, Section 3186 ........................................................................... 10, 18
 Title 28, Section 2241 ...................................................................... 9, 10, 14, 15

### Rules and Regulations

5th Circuit Rule
 Rule 27.4 ......................................................................................................23
 Rule 32.1 ......................................................................................................23

Federal Rules of Appellate Procedure
 Rule 8 .................................................................................................... 11, 12
 Rule 8(a) ......................................................................................................12
 Rule 8(a)(1)(a) ............................................................................................... 1
 Rule 27(d)(1) ...............................................................................................23
 Rule 27(d)(d)(A) ..........................................................................................23
 Rule 32(a)(5) ...............................................................................................23
 Rule 32(a)(6) ...............................................................................................23
 Rule 32(f) .....................................................................................................23

Federal Rules of Civil Procedure

Rule 59 ...................................................................................................10
Rule 59(e) .............................................................................................10
Rule 62 ...................................................................................................12

## NATURE OF MOTION AND RELIEF SOUGHT

Petitioner-Appellant Huzefa Hafiz Ismail, a United States citizen, asks this Court to enter a temporary stay precluding the United States Department of Justice ("DOJ") and the United States Department of State ("DOS") from taking any further action to surrender and extradite him to the Republic of France pending resolution of his recently noticed appeal, Case No. 25-11173.

Mr. Ismail initially and appropriately sought such relief from the district court in compliance with Fed. R. App. P. 8(a)(1)(a). On November 3, 2025, the district court denied Mr. Ismail's request for a stay pending adjudication of his appeal but granted Mr. Ismail's request for alternative relief, entering a seven-day stay so that Mr. Ismail could seek such relief from this Court. This motion is being filed before the expiration of that stay.

## INTRODUCTION

Mr. Ismail is an American citizen with no prior criminal record. He has been detained for more than a year based only on the French request for extradition, and he now faces imminent extradition to the Republic of France even though the legal process challenging that extradition has not concluded. Despite Ismail's timely appeal of the district court's denial of his habeas petition on October 17, 2025, DOJ and DOS intend to surrender and extradite Mr. Ismail.

All Mr. Ismail seeks is a temporary stay so that he may secure his legal rights by pursuing his appeal before he is extradited beyond the constitutional, statutory, and procedural protections of the United States, with no ability for the U.S. to effectuate his return if Mr. Ismail prevails in this Court. In other words, he seeks to maintain the status quo while he exhausts his legal process. Nothing more, nothing less. This Court should grant that relief.

In determining if a stay is warranted, this Court considers whether (1) the movant has made a showing of likelihood of success on the merits, (2) the movant has made a showing of irreparable injury if the stay is not granted, (3) the granting of the stay would substantially harm the other parties, and (4) the granting of the stay would serve the public interest. *Ruiz v. Estelle ("Ruiz I")*, 650 F.2d 555, 565 (5th Cir. 1981). Indeed, even where a movant cannot show a probability of prevailing on the merits, controlling precedent holds that a stay is nonetheless warranted where a movant's appeal presents a "substantial case on the merits" involving a "serious legal question" and the equities "weigh[] heavily" in the movant's favor. Mr. Ismail more than satisfies these requirements. *Id.* (citations omitted); *Ruiz v. Estelle ("Ruiz II")*, 666 F.2d 854, 856 (5th Cir. 1982).

Before an American citizen can be extradited to stand criminal trial in a foreign country without the many protections our constitutional republic affords, the government must show probable cause justifying such an action. *Quintanilla v.*

*United States*, 582 F. App'x 412, 415 (5th Cir. 2014) (citations omitted) ("Certification of eligibility for extradition requires a finding of probable cause that the accused committed the charged offense" which is "the existence of a reasonable ground to believe the accused guilty of the crime").  While that evidentiary burden is modest, the law is clear that this showing *must* be made through the submission of "competent evidence." *Id.* (quoting *Balzan v. United States*, 702 F.3d 220, 223 (5th Cir. 2012)). What constitutes "competent evidence" in these circumstances is precisely the sort of "serious legal question" envisioned by *Ruiz I* and *Ruiz II*.

It is also a serious legal question that the district court got wrong. *Ismail v. United States*, No. 4:25-cv-0446-O (N.D. Tex. Apr. 23, 2025) (the "Habeas Proceeding"), at ECF Nos. 19, 20. Mr. Ismail has demonstrated that he is likely to prevail on the merits because France failed to submit competent evidence in support of its extradition application. *See infra* Background § A, Exhibit 3, Exhibit 5; *see also* Habeas Proceeding at ECF Nos. 16, 21. Simply put, Mr. Ismail is not the pseudonymous individual that the French believe him to be. As outlined below, and as will be fully briefed for the Court, the French extradition materials submitted to the district court are the product of guesswork, relying on conclusory allegations and vague, speculative claims. *See* Exhibit 3 at 52-54, 66-67, 69-71.[1] Nowhere present

---

[1] Citations are to the ECF pagination applied at the top of each electronically filed document.

in the materials are the types of evidence courts—including this Court—have deemed competent, such as affidavits, eyewitness testimony, specific identifying information, photographs, fingerprints, or handwriting analysis. It should take more to extradite an American citizen. *See generally id.* At a minimum, his appeal presents a "substantial case" that the district court committed reversible error in denying his habeas petition.

The last two factors also strongly favor implementing a stay. Without a stay, Mr. Ismail will suffer irreparable harm – he will be extradited from his country, beyond its protection and reach. With one, he will not. By contrast, the United States will suffer no injury or prejudice if a stay is entered. – Mr. Ismail has been in custody for more than a year and will remain there. And a stay secures and strongly advances the public interest by protecting the legal rights of the citizenry. This Court should temporarily stay the executive branch from taking further action so that Mr. Ismail can secure his legal rights as an American citizen, pursue his appeal, and prevail in before this Court.

## BACKGROUND

### A.      The Republic of France Seeks Mr. Ismail's Extradition

On August 25, 2024, the Republic of France, through DOJ, filed a complaint in the Northern District of Texas seeking the arrest, detention, and extradition of Mr. Ismail. *See In re Ismail*, No. 4:24-mj-000656-BP-1 (N.D. Tex. Aug. 25, 2024) (the

"Extradition Matter"). The French allege that Mr. Ismail is the man behind the online moniker "CEO / DARKBANK," to whom a number of financial crimes are attributable. *See* Exhibit 3 at 3 (French diplomatic note formally requesting Mr. Ismail's extradition for, among other crimes, money laundering, aiding in the false justification of the origin of assets and income, aggravated money laundering, and participation in a criminal conspiracy to prepare a crime). Mr. Ismail was detained on August 27, 2024, and has remained in confinement ever since. Extradition Matter at ECF Nos. 9, 10 (ordering that Mr. Ismail be detained pending a hearing that was later cancelled); *see also* Habeas Proceeding at ECF No. 17 (Mr. Ismail's motion for release on bond to home confinement).

The French supported their extradition request with a packet of written materials (the "Extradition Package"). Exhibit 3. The Extradition Package outlines the crimes purportedly committed and alleges that they were undertaken by an individual who used the SkyECC online moniker "CEO/DARKBANK." *See* Exhibit 3 at 51-63 (outlining criminal activity that is the subject of the French investigation). And, Mr. Ismail does not challenge that France has presented competent evidence to establish probable cause that criminal activity occurred. The Extradition Package, however, claims that Mr. Ismail is CEO / DARKBANK. *Id.* at 65. But, this "conclusion" is not based on affidavits, witness testimonials, or any forensic analysis included within the Extradition Package. *See generally id.* Rather, it is based on

speculation, as evidenced by the qualifying language used throughout the Extradition Package, including terms such as "possibly," "could," "may," and "is said to." Exhibit 3 at 54, 70. Thus, the legal error committed by the district court in denying Mr. Ismail's writ is not that there is a lack of evidence of criminal activity, but the failure to proffer competent evidence to establish a nexus that Mr. Ismail allegedly committed such criminal acts.

More specifically, the Extradition Package contains, at most, six vague and speculative assertions that Mr. Ismail is "CEO / DARKBANK." None are supported by underlying facts, witness testimony or statements, affidavits, or documents – the necessary underlying "competent evidence" – and thus are insufficient to satisfy probable cause:

(1) The conclusion, without any underlying facts, affidavits, testimony, or documentation, that "cross-referencing" undefined and unexplained "intelligence" identified Mr. Ismail as CEO / DARKBANK; Exhibit 3 at 71;

(2) Non-specific traveler information concerning Mr. Ismail's passage to Turkey during February of 2021, the same time period of that French investigators assert that "CEO / DARKBANK" undertook similar travel, ostensibly used to show both individuals were in the same country during roughly the same time. Exhibit 3 at 65-66. But the only "fact" the Extradition Package relies on to support this conclusion is a single SkyECC message that "CEO / DARKBANK" sent around the

time of return travel from Turkey to Dubai, indicating that he (or she) would "be offline for 6hrs" on February 22. *Id.* at 66. This is pure speculation – not competent evidence – as millions of people visit the country of Turkey annually for many reasons, and there are a myriad of more plausible reasons why "CEO / DARKBANK" may have been "offline for 6hrs," particularly since that message made no reference to flying or travel

(3) The reference to two SkyECC messages sent in January of 2021, where "CEO / DARKBANK" remarks that he had been "in the hospital with [his] Mrs" and had been "busy with the Doctor," Exhibit 3 at 67, which the French claim identify Mr. Ismail because, based upon an unexplained "AMADEUS request," Mr. Ismail's daughter was born on January 11, 2021. *Id.* But the message "just" is open to a wide range of subjectively reasonable interpretation. It does not suffice to establish a reasonable and reliable link to Mr. Ismail regardless of whether his daughter was born during that time period. *Id.* at 67;

(4) The passing reference to unexplained "intelligence gathered through police cooperation" that Mr. Ismail had "two girlfriends: one of Indian nationality with whom he would have [a child], and one of Russian nationality," when "CEO / DARKBANK" is believed to have a Russian ex-wife. Exhibit 3 at 69. But those assumptions are not supported by any underlying factual support or documentation

– competent evidence—which could have undoubtedly been obtained by French investigators through marriage, visa, or residency records;

(5) The assertion, based again on anonymous and unexplained "police cooperation" that Mr. Ismail "could" have used a modified luxury vehicle. Exhibit 3 at 52-54. But, once again, the Extradition Package does not contain information or documentation showing or suggesting that Mr. Ismail owned, leased, rented, or ever even used such a vehicle; and

(6) Generic "nicknames" used in purported SkyECC messages wherein the individual believed to have committed the at-issue criminal activity is referred to as "CEO Huzaif," "Money Dxb," "US Money Man," "WATCHMAN," "Mexicans," "timezone," "VIP," and "zuckerberg," which the French claim "may" identify Mr. Ismail without any factual support tying them to Mr. Ismail. Exhibit 3 at 70. Many of these "nicknames" (*e.g.*, "zuckerberg," "mexicans" and "timezone") have no relationship to Mr. Ismail and the French make no effort to explain the connection. And as to those nicknames that "may" refer to Mr. Ismail, the Extradition Package again fails to provide any facts or competent evidence supporting the conclusion that those monikers in fact refer to Mr. Ismail.

Notwithstanding these infirmities, the magistrate certified Mr. Ismail's extradition in April of 2025. *See generally* Exhibit 2.

**B.    Mr. Ismail Seeks Habeas Review of the Certification Through the District Court.**

Mr. Ismail filed his Petition and Brief for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition") with the district court on April 23, 2025. Exhibit 1.[2] The Petition sought collateral review of the magistrate judge's certification, arguing that France had not satisfied its burden of establishing probable cause. *See generally id.* The district court set a briefing schedule, allowed the Government to "file any brief that it deems appropriate," limited Mr. Ismail's reply to 10 pages, restricted such filing to "a reply to [the Government's] brief" and prohibited the introduction of new facts or arguments. Habeas Proceeding at ECF No. 3. The Government filed its opposition on June 23, 2025. *Id.* at ECF No. 6.

Mr. Ismail, after securing new counsel, filed his reply on August 7, 2025, and asked for oral argument. Habeas Proceeding at ECF No. 16. Mr. Ismail's reply emphasized that France's allegation that he is the individual behind the online moniker "CEO / DARKBANK" was not sustained by the necessary competent evidence to establish that there was a "reasonable ground to believe" Mr. Ismail was the same person. More specifically, because the handful of bases asserted in the Extradition Package did not constitute (and were not supported by) competent

---

[2] Appended to the Petition were the magistrate judge's certification order (Exhibit 2), the French Extradition Package (Exhibit 3), and Mr. Ismail's opposition thereto (Exhibit 4).

evidence, the application was legally infirm and had to be set aside through issuance of a writ by the district court.[3]

### C. The District Court Denies Mr. Ismail's Petition and Rule 59(e) Relief.

On August 22, 2025, the district court denied the Petition and entered final judgment. Habeas Proceeding at ECF Nos. 19, 20. The Court declined to hold oral argument on either Mr. Ismail's Petition or his accompanying motion for release on bond. The Court concluded that the materials submitted by France were comprised of "self-authenticated documents" that "may serve as competent evidence," and satisfied the probable cause burden, notwithstanding "any perceived deficiencies that [Mr.] Ismail believes exist[.]" *Id.* at ECF No. 19 at 6.

Mr. Ismail timely moved to amend the Court's judgment under Rule 59. Habeas Proceeding at ECF N. 21. The Court denied the motion. *Id.* at ECF No. 22. The case was then reassigned. *Id.* at ECF No. 23.

### D. The State Department Informs Mr. Ismail it Will Surrender and Extradite Him to France.

On Friday, October 17, 2025, DOS sent Mr. Ismail's counsel a letter stating that the Deputy Secretary of State "decided to authorize Mr. Ismail's surrender to France pursuant to 18 U.S.C. § 3186 and the applicable extradition treaty between

---

[3] Mr. Ismail also moved for release on bond to home confinement, citing his lengthy detention, exigent circumstances, and absence of flight or community risk. Habeas Proceeding at ECF No. 17.

the United States and France." Exhibit 5 at Exhibit A. That same day, Mr. Ismail

filed a Notice of Appeal with this Court. ECF No. 1. Subsequent correspondence

between counsel for Mr. Ismail and DOJ clarified that, absent a stay, DOS would

proceed with Mr. Ismail's surrender and extradition.

### E.    Mr. Ismail Asks the District Court to Stay Extradition Pending Adjudication of His Appeal.

Shortly thereafter, Mr. Ismail moved the district court for a stay prohibiting

DOS and/or DOJ from taking further action to surrender and extradite him to France

pending resolution of this appeal. Exhibit 5. Mr. Ismail also sought in the alternative

a temporary stay so that he could seek such relief directly from this Court under Fed.

R. App. P. 8. *Id.* at 15 of 18. That same day, the district court issued an order

directing DOJ to respond by Friday, October 31, 2025. Exhibit 6. DOJ timely filed

its opposition. Exhibit 7. The following Monday, November 3, the district court

issued a short order denying Mr. Ismail's requested stay pending adjudication of the

appeal. Exhibit 8. The district court cited Mr. Ismail's inability to "demonstrate[] a

likelihood of success on the merits of his appeal." *Id.*(citation omitted). The court

did, however, grant Mr. Ismail's request for alternative relief and entered a seven-

day stay:

> However, finding good cause, the Court **GRANTS** Petitioner's request
> for a temporary stay of his extradition so that he may file an emergency
> appeal of this Court's order with the Fifth Circuit. Petitioner's
> extradition is hereby **stayed** for the later of (1) seven days from this
> order or (2) if Petitioner files a motion to stay with the Fifth Circuit

within seven days from this order, the date the Fifth Circuit rules on
Petitioner's stay motion.

*Id.* (emphasis in original).

## THE GOVERNING LEGAL STANDARD

This Court's power to grant a stay is both inherent and statutory. *Alliance for Hippocratic Medicine v. Food & Drug Administration*, No. 23-10362, 2023 WL 2913725, at *3 (5th Cir. 2023) (citations omitted); *see also Laurenzo By Laurenzo v. Mississippi High School Activities Ass'n, Inc.*, 708 F.2d 1038, 1042 n.9 (5th Cir. 1983) (citing Fed. R. App. P. 8) ("Rule 8 explicitly gives the court of appeals the power to grant a stay or an injunction pending an appeal.").

In the habeas context, appellate courts apply the same factors that guide the application of stays under Fed. R. App. P. 8(a) and Fed. R. Civ. P. 62. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). A stay is warranted where:

> (1) the "stay applicant has made a strong showing that he is likely to succeed on the merits;"
> (2) the "applicant will be irreparably injured absent a stay;"
> (3) the issuance of the stay will not "substantially injure the other parties interested in the proceeding;" and
> (4) the public interest is furthered by the issuance of a stay.

*Id* at 776. (citations omitted); *Quintanilla*, 582 F. App'x at 414 (citations omitted); *see also Nken v. Holder,* 556 U.S. 418, 426 (2009). Of those four factors, "[t]he first two factors are the most critical." *FTC ex rel. Yost v. Educare Ctr. Servs., Inc.*, No. EP-19-CV-196-KC, 2020 WL 4334117, at *1 (W.D. Tex. Apr. 3, 2020) (citing *Nken*,

556 U.S. at 434). At the same time, "maintenance of the status quo is an important

consideration in granting a stay." *Id.* (quoting *Barber v. Bryant*, 833 F.3d 510, 511

(5th Cir. 2016)).

Importantly, this Court has expressly recognized that "the movant need not

always show a 'probability' of success on the merits; instead, the movant need only

present a substantial case on the merits when a serious legal question is involved and

show that the balance of the equities weighs heavily in favor of granting the stay."

*Ruiz I*, 650 F.2d at 565 (citations omitted). And where the "balance of equities" –

that is, (1) irreparable harm, (2) prejudice to the non-moving party, and (3) the public

interest – are "heavily tilted in the movant's favor", and the issue before the court is

"one with patent substantial merit," a stay is warranted. *Id.* at 857 (citation omitted).

## ARGUMENT

I.     **A Stay Pending Adjudication of Mr. Ismail's Appeal is Necessary and
       Appropriate Under Controlling Law.**

This Court should apply the *Ruiz I/Ruiz II* test because Mr. Ismail's appeal

concerns an indisputably "serious legal question," he presents a substantial case on

the merits, he will suffer irreparable injury absent a stay preserving the status quo,

and the balance of equities weigh heavily in his favor. And, under this standard, a

stay is necessary and appropriate and should be entered.

**A.    Mr. Ismail's Appeal Presents a Substantial Case on the Merits Concerning A Serious Legal Question.**

Under the appropriate merits standard articulated in *Ruiz I* and *Ruiz II*, to satisfy the first factor, Mr. Ismail "need only present a substantial case on the merits when a serious legal question is involved," *Ruiz II*, 666 F.2d at 856 (citation omitted). His appeal unquestionably does.

The Petition challenges whether the Republic of France submitted "competent evidence tending to show probable cause." *Balzan*, 702 F.3d at 223 (quoting *Gusikoff v. United States*, 620 F.2d 459, 462 (5th Cir. 1980)). Controlling law provides that the country seeking extradition – here, the Republic of France – must establish probable cause both that a crime was committed *and* that Mr. Ismail was the individual who committed that crime. *Quintanilla*, 582 F. App'x at 415; *Garcia v. Holder*, 534 F. App'x 269, 270 (5th Cir. 2013); *In re Extradition of Vargas*, 978 F. Supp. 2d 734, 746-47 (S.D. Tex. 2013) (citations omitted); *In re Extradition of Atuar*, 300 F. Supp. 2d 418, 427 (S.D. W. Va. 2003); *In re Extradition of Singh,* No. 01–6215 OWW, 98–5489 OWW, 2005 WL 3030819, at *47-48 (E.D. Cal. Nov. 9, 2005); *Matter of Extradition of Demjanjuk*, 612 F. Supp. 544, 548 (N.D. Ohio 1985). At issue here is the latter requirement.

The Republic of France *must* establish probable cause concerning CEO / DARKBANK's identity through "competent evidence." *Balzan*, 702 F.3d at 223 (citation omitted); *Ludecke v. U.S. Marshal*, 15 F.3d 496, 497 (5th Cir. 1994)

(citations omitted) ("Our function 'is to determine whether there is any *competent evidence* tending to show probable cause.'") (emphasis added). While this Court has neither defined nor set forth an exhaustive list of what materials constitute "competence evidence," the materials submitted by France are neither competent evidence nor probative of CEO / DARKBANK's identity. Thus, both the question— and the adequacy of the district court's answer—raise "serious legal questions" warranting a stay. Because "competent evidence" is the foundation for establishing "probable cause," it is the only barrier between American citizens remaining free in their own country and being extradited to another country to stand trial without the constitutional, statutory, and procedural protections afforded by their own.

The Petition also "present[s] a substantial case on the merits[.]" *Ruiz II*, 666 F.2d at 856 (citation omitted). This Court's decision in *Garcia* affirming the district court's denial of an extradition habeas petition, 534 F. App'x at 270 is instructive. There, the Court affirmed the district court's finding that sufficient "competent" evidence identifying the extraditee as the perpetrator had been submitted by the country seeking his extradition. *Id.* That evidence included detailed information from three separate eyewitnesses that identified Garcia as the shooter, placed Garcia in the immediate vicinity of the shooting at the time it occurred, and also identified Garcia as driving the perpetrator's vehicle away from the shooting. *Id.*

A number of district courts have also outlined what does—and does not—
qualify as "competent" evidence of identity. As the District of Arizona observed,
eyewitness accounts coupled with specific identifying information satisfies this
burden. *Al-Nouri v. Blinken,* No. CV-22-00633-PHX-GMS (DMF), 2023 WL
11827242, at *38 (D. Ariz. June 26, 2023). Such "competent" evidence can also
include photographic identifications of the individual in question, coupled with
fingerprint and handwriting analyses, *In re Extradition of Atuar*, 300 F. Supp. 2d at
427, birthday, nationality, and photographic evidence matching the extraditee, *Noel
v. United States*, 12 F. Supp. 2d 1300, 1304 (M.D. Fla. 1998), extensive affidavit
testimony, *In re Extradition of Aquino*, 697 F. Supp. 2d 586, 597-600 (D.N.J. 2010),
*Matter of Extradition of Demjanjuk*, 612 F. Supp. at 548; and detailed witness
accounts. *In re Extradition of Vargas*, 978 F. Supp. 2d at 746-47.

Moreover, to the extent that France (and the executive branch) rely on
"intelligence" and "police cooperation" as an imprimatur that its speculation and
conclusions are "competent evidence," that legal argument fails. Appellate courts,
including this Court, have rejected wholly conclusory contentions of law
enforcement without sufficient underlying factual evidence as insufficient to satisfy
probable cause. *See*, *e.g.*, *United States v. Cervantes*, 703 F.3d 1135, 1139 (9th Cir.
2012) (rejecting officer's conclusion that probable cause existed as "conclusory"
where it lacked "underlying facts" as to why the officer arrived at the conclusion

that a particular residence contained illicit narcotics); *United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985) (noting "a wholly conclusory statement unsubstantiated by underlying facts is not sufficient to support a determination of probable cause" and recognizing affidavit lacked "sufficient information to judge the credibility of the confidential informant").

That kind of detailed, specific, competent evidence was not submitted here. *See* Background § A, *supra*. Mr. Ismail has thus shown a likelihood of prevailing on the merits.

### B.    The Remaining Factors Tilt Heavily in Mr. Ismail's Favor.

A stay pending adjudication of Mr. Ismail's appeal is also necessary and appropriate because the "balance of equities" are "heavily tilted in the movant's favor." *Ruiz II*, 666 F.2d at 857 (citation omitted). Those "equities" turn on whether: (1) the movant will suffer irreparable harm absent the issuance of a stay (he will), (2) a stay will "substantially injure" other parties interested in the proceeding (it will not), and (3) the "public interest" is furthered by the issuance of a stay (it is). *Id.* Where the federal government is the party opposing a stay, the last two factors merge into a single analysis. *Nken*, 556 U.S. at 435. Each remaining factor here strongly supports granting a stay.

### 1. *Mr. Ismail will suffer obvious irreparable harm if a stay is not issued.*

Denying a stay will cause irreparable harm. DOJ and DOS will extradite Mr. Ismail, a U.S. citizen, to France despite no meaningful competent evidence of identity unless precluded by court order. Exhibit 5 at Exhibit A (". . . the Deputy Secretary of State decided to authorize Mr. Ismail's surrender to France pursuant to 18 U.S.C. 3186 and the applicable extradition treaty between the United States and France."). As courts across the country have recognized, that is unquestionably irreparable harm. *See Quintanilla*, 582 F. App'x at 414 (irreparable harm occurs where "extradition while an appeal of the denial of habeas corpus is pending"); *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023) ("Irreparable injury is obvious: Once extradited, Toledo's appeal will be moot.") (citation omitted); *Vitkus v. Blinken*, 79 F.4th 352, 367 (4th Cir. 2023) (recognizing that a petitioner's "extradition during ongoing litigation" would "constitute irreparable harm"); *Demjanjuk v. Meese*, 784 F.2d 1114, 1118 (D.C. Cir. 1986) (noting that "the imminent extradition of petitioner to Israel may qualify as a threat of irreparable harm").

### 2. *A stay will not injure the federal government but will further the public interest.*

By contrast, granting a temporary stay that preserves the status quo will not injure the federal government in any cognizable way. Mr. Ismail is in custody—

indeed, he has been confined for well over a year. If the stay is granted, he will remain in custody. If Mr. Ismail's appeal is successful, the issue is moot. If his appeal is unsuccessful, he will already be in federal custody for surrender and extradition. The United States will suffer no prejudice.

Staying further action will also strongly advance and safeguard critical public interests. Specifically, it allows Mr. Ismail, an American citizen, to pursue meaningful judicial review and affords him the full and fair opportunity to challenge the legality of his extradition from his *own* country under this country's laws. A stay also protects the interests of future American citizens subject to the process because it will allow this Court to address what constitutes competent evidence sufficient to sustain an extradition certification. And, without a stay, any legal victory at the appellate level will be meaningless for Mr. Ismail – he will be overseas, beyond the reach of the United States, and will not be returned. Simply put, a stay furthers the public interest. *See Noriega v. Pastrana*, No. 07-cv-22816-PCH, 2008 WL 331394, at *3 (S.D. Fla. Jan. 31, 2008) (issuing stay and finding in relevant part that public interest supported a stay for the reasons outlined above); *In re Extradition of Hurtado-Hurtado*, No. 08-22414-MC, 2009 WL 1444509, at *1 (S.D. Fla. May 21, 2009) (citation omitted) (same); *Blasko v. Boyden*, No. 1:18-cv-01649-DAD-SAB (HC), 2022 WL 3969648, at *7 (E.D. Cal. Aug. 31, 2022) (citation omitted) ("petitioner's interest in having a full and fair opportunity to litigate his claim"

trumped any competing public interests) (cleaned up); *Martinez v. United States*, No. 3:14–CV–00174, 2014 WL 4446924, at *6 (M.D. Tenn. Sep. 9, 2014) (public interest supported staying case pending appeal).

The Government's obligations to France—or any country—under its extradition treaties do not, and cannot, trump its obligations to its own citizens. *Blasko*, 2022 WL 3969648, at *7 (rejecting argument that "permitting petitioner to seek appellate review of his legal claims in this case interferes with the ability of the United States to comply with its treaty obligations."); *Martinez*, 2014 WL 4446924, at *6 (chastising the government for conflating alien removals under federal law with extradition of citizens and stating that "in the context of a citizen facing extradition to another country, staying the extradition to allow him to seek appellate review of his claims that the extradition is unlawful clearly is in the public interest.").

Even if obligations to another nation could outweigh obligations to U.S. citizens, a stay would not undermine the United States' interest in promptly fulfilling what it (erroneously) believes are its obligations under the governing treaty or undercut its relationship with France. The executive branch has repeatedly conveyed to France that it will comply with the treaty, it filed France's extradition application in federal court, and it has litigated on France's behalf. At the request of the French government, it detained Mr. Ismail for more than a year, it has communicated that it will surrender and extradite Mr. Ismail, and it has opposed every type of relief sought

20

by Mr. Ismail at the district court level. This Court temporarily preserving the status quo does nothing to undermine or interfere with foreign affairs or the parties' relationship. It merely allows the American citizen subject to extradition to exhaust his legal process and challenge his extradition order.

Finally, Mr. Ismail has not caused any delays since France first sought his extradition. *Blasko*, 2022 WL 3969648, at *7 (citation omitted). To the extent there were delays, they are the responsibility of the France and DOS. Nor is Mr. Ismail's challenging the legality of his extradition "in any way an abuse of the legal process." *Id.* (quoting *Martinez*, 2014 WL 4446924, at *6).

In sum, the "balance of equities" strongly tilts in Mr. Ismail's favor. Coupled with the serious legal question raised by his appeal and the substantial case on the merits presented therewith, a temporary stay is necessary and appropriate under controlling precedent.

## CONCLUSION

For the reasons set forth herein, this Court should temporarily stay DOJ and DOS from taking further action to surrender and extradite Mr. Ismail to the Republic of France until this Court resolves his appeal.

Dated: November 10, 2025                Respectfully submitted,

                                        */s/ Anne M. Voigts*

                                        Anne M. Voigts
                                        PILLSBURY WINTHROP SHAW PITTMAN LLP
                                        2550 Hanover Street
                                        Palo Alto, CA 94304-1115
                                        Telephone: (650) 233-4500
                                        anne.voigts@pillsburylaw.com


                                        *Counsel for Petitioner-Appellant*
                                        *Huzefa Hafiz Ismail*

## CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Fed. R. App. 32(g)(1) and 5TH CIR. R. 32.3, that this motion complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1), Fed. R. App. P. 32(a)(5), Fed. R. App. P. 32(a)(6), and 5TH CIR. R. 27.4, as this motion was prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Times New Roman.

I further certify that this motion complies with the length limitations set forth in Fed. R. App. P. 27(d)(2)(A) and 5TH CIR. R. 27.4, as it contains 4,967 words, excluding those portions of the motion exempted by Fed. R. App. P. 32(f) and 5TH CIR. R. 32.2, which is within the 5,200-word limitation.

I also certify that this motion contains a Certificate of Interested Persons and that it complies with the pre-filing notification requirements of 5TH CIR. R. 27.4. Prior to filing this motion, counsel for Petitioner-Appellant conferred in writing with counsel for Respondent-Appellee the United States Department of Justice, advising of the intent to file this motion and the relief sought herein. Opposing counsel advised that the Department of Justice opposed the relief sought herein and would timely file an opposition with this Court.

Dated: November 10, 2025

_/s/ Anne M. Voigts_
Anne M. Voigts

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system on November 10, 2025, which serves all counsel of record.  I further certify that this motion was also served contemporaneously via e-mail on counsel of record for the United States Department of Justice in the district court habeas proceeding, Andrea M. Hyatt, Esq.

Dated: November 10, 2025

_/s/ Anne M. Voigts_
Anne M. Voigts